IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| TONYA GRAHAM<br><br>*Plaintiff,*<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE<br>(Drug Enforcement Administration)<br><br>and<br><br>MERRICK GARLAND<br>In his official capacity as Attorney General,<br>U.S. Department of Justice<br><br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br><br>*Defendants.* | Civil Action No. _____<br><br>**PLAINTIFF TONYA GRAHAM'S COMPLAINT** |

## COMPLAINT

Plaintiff, Dr. Tonya Graham, ("**Plaintiff**" or "**Graham**") by and through her undersigned counsel, according to her personal knowledge of her actions and interactions and upon information and belief as to the actions of others, hereby files this Complaint and alleges and states as follows:

### NATURE OF THE ACTION

1. Since February 2003, and to the present date, Plaintiff Tonya Graham has been employed with the Department of Justice ("DOJ" or "Defendant") as a part of the Drug Enforcement Administration ("DEA"), in the Houston Division Office ("HDO"). Up until recently and following her initiation of the EEO complaint process, Plaintiff held the position of Senior Special Agent as a part of the DEA's Tactical Diversion Squad ("TDS").

2. Plaintiff is an African American female. In February 2003, when Plaintiff first

started her employment at DOJ, there was only one African American female special agent in a leadership role. During her tenure at the DOJ, there has been only one other African American female special agent in a leadership role at the HDO.

3. Plaintiff has worked hard to become the next African American female special agent in a leadership role at the HDO; however, Plaintiff has faced continued acts of discrimination and retaliation by white, male officials holding management positions.

4. Since on or around April 2020, Plaintiff has been subjected to harassment and intimidation from supervisors and managing officials at the DEA. This has been in the form of disparaging and abusive comments including those pertaining to "racial issues," false accusations that Plaintiff spoke negatively about the DEA to other DOJ personnel, non-selection for promotion within the DEA, demotion, and lowered performance evaluation.

5. As a result, on or about November 24, 2020, Plaintiff filed a complaint against the DEA for discrimination on the basis of race and sex.

6. By January 2021, Plaintiff had been sidelined by the DEA to a desk job, preventing her from continuing her work on combatting the opioid crisis.

7. Sadly, Plaintiff's mistreatment is not an isolated incident for the DEA, as evidenced by the mistreatment experienced by other African American special agents in the same division of the DEA, as well as other minorities, who complained of violation of federal laws, including EEO laws. These complaints are ongoing through various stages of the EEO process.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f) and 2000e-16(c). Jurisdiction is appropriate against the Department of Justice, and its component agency the DEA, pursuant to Title VII of

the Civil Rights Act of 1964, 42 U.S.C. § 2000c.

9. Additionally, the case arises out of the actions of a federal agency as defendant and therefore jurisdiction is proper pursuant to 28 U.S.C. § 1346.

10. Venue is proper in this judicial district under 28 U.S.C. §1391, as the component agency, the DEA HDO, of the federal defendant, DOJ, is located in this district, and the majority of the acts complained of under the various statutes occurred in Houston, Texas. 42 U.S.C. § 2000e-5(f)(3); 28 U.S.C.§ 1391(b).

## PARTIES

11. Plaintiff, Tonya Graham, is a Special Agent (GS-13) with the DEA and resides in Houston, Texas.

12. Defendant, U.S. Department of Justice ("DOJ") is a federal Agency who, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000c, is the properly named party for claims arising under the Act, since the DEA is a component of the DOJ.

13. Defendant Merrick Garland is the Attorney General of the United States and the head of the DOJ. He is therefore the proper party to be named and served on Plaintiff's various EEO complaints. AG Merrick Garland is a nominal party only and is not believed to have any personal knowledge of the events at issue. The actual discriminatory actors in this case are all employees of the DEA, described herein, which is a component of the DOJ.

*Procedural History and Exhaustion of Administrative Remedies*

14. After Plaintiff was informed of her non-selection for various promotional opportunities and positions, as described more fully below, she took the following steps to assert and defend her rights.

15. On or about September 10, 2020, Plaintiff made initial contact with the DEA

EEO Office to report her claims of discrimination, based on race and sex as well as retaliation and reprisal for protected activity, due to her non-selection to the Criminal Investigator, Group Supervisor Position (CMB 20-218-2), as well as for other GS-14 positions to which she applied between 2017 and 2020.

16. On November 24, 2020, Plaintiff timely filed a Complaint of Discrimination with the U.S. Equal Employment Opportunity Commission, Houston District Office.

17. Believing she was more qualified than other applicants and that she was not adequately considered for the vacancy opening because she was an African-American female, Plaintiff brought a claim of race and sex discrimination.

18. Based on discovery related orders issued by the Administrative Judge in the EEOC proceedings, and related statements made by the Administrative Judge during the proceedings, Plaintiff believes that she will not be afforded an equal and fair opportunity to bring her claims of discrimination. Plaintiff participated in the administrative EEO process in good faith. Pursuant to 42 U.S.C. §2000e-16(c), it has been more than "…one hundred and eighty [180] days from the filing of the initial charge of discrimination with the department, agency or unit…" and therefore this Plaintiff eligible to file a civil action in federal district court. *See also* 29 CFR § 1614.407(b).

19. Accordingly, Plaintiff has exhausted her administrative remedies, and this claim is now ripe to be considered by this Court.

## **FACTS**

***Plaintiff's Unblemished Employment History and Exemplary Career as a DEA Special Agent Rendered Her Highly Qualified for a Promotion to a Leadership Position***

20. Plaintiff has a Doctorate in Business Administration, a Master of Arts Degree in Organizational Management, is a former United States Secret Service Uniformed Division

Officer, and a veteran of the United States Army.

21.     From 2014 to 2020, Plaintiff worked in, and was an integral part of, the DEA TDS's investigation of the diversion of pharmaceutical drugs onto the illegal drug market in the Houston area supporting DOJ efforts to fight the opioid epidemic. Plaintiff was largely responsible for an unprecedented number of arrests of doctors, pharmacists and other involved in the illegal trafficking of pharmaceutical opioids.

22.     As a result of her hard work towards combatting the opioid crisis, in November 2019, Plaintiff received awards from DOJ for her outstanding accomplishments and leadership in fighting the opioid epidemic. The awards included the Leadership Award and Investigative Initiative Award by the DOJ Criminal Division, Health Care Fraud Unit, as well as bonus awards in the form of a Quality Step Increase.

23.     Prior to 2020, Plaintiff had no disciplinary action taken against her prior and has received "outstanding" performance ratings.

24.     During her employment, Plaintiff has met all standards for promotion.

***DEA Houston's Culture and Pattern of Promoting White Males Over Qualified Minorities***

25.     The DEA has a pattern of promoting predominantly White male special agents over minority special agents that can only be explained by "personal preferences."

26.     Prior to August 2020, no African American male or African American female special agent had been promoted in the Houston Division Office in nearly 10 years.

27.     Overall, the DEA epitomizes a systematic culture of bias and discrimination, particularly in their exclusion of African American female special agents from serious consideration in the DEA's selection process for the special agent promotional program. Instead, the DEA exhibits a subjective decision-making process motivated by the stereotypical attitudes

and gender bias of the White male officials making recommendations. Thus, sex and race-based stereotypes believed and reinforced by DEA selection officials have prevented highly qualified female and African American agents from being promoted to senior positions. This is consistent with, and reflected in, the DEA's historical and statistical disparities in its promotion selections favoring white male agents.

*Plaintiff Engages in Protected Activity by Acting as a Witness to Sexual Harassment*

28. LaChanda Sears ("Sears") is an African American female Special Agent also worked in the DEA's Tactical Diversion Squad along with Plaintiff.

29. On or around January 2019, while at the DEA office in the TDS group area, Sears experienced unwanted and inappropriate touching from FBI task force agent, Bruce Alpe, on Sears' buttocks area. Sears is an African American female Special Agent also working in the DEA's Tactical Diversion Squad.

30. Plaintiff had been participating on a conference call with Sears at the time that Alpe inappropriately touched her and witnessed Sears' reaction to the events. In addition, Sears subsequently confided in Plaintiff about the details of these events, which Plaintiff encouraged Sears to report.

31. On or about March 20, 2019, Sears reported the incident and other related incidents to the DEA's EEO office. As a part of her reporting, Sears listed Plaintiff as a witness to the events. Subsequently, Plaintiff participated in numerous meetings and interviews relating to the incident and Sears' EEO claims of sexual harassment. Plaintiff supported Sears' claims of sexual harassment based on her good faith and honest recollection of the events she had witnessed.

32. Plaintiff additionally made attempts to support Sears and allay her fear of

continued sexual harassment by volunteering to accompany her to meetings with male officials. On at least one occasion, Plaintiff was prohibited from participation.

***Discriminatory Behavior by Senior Officials at the DEA HDO***

33. Since on or around April 2020, Plaintiff has been subjected to harassment and intimidation from supervisors and managing officials at the DEA. This has been in the form of disparaging comments, verbal abuse, refusal to provide support in a leadership role, comments and instructions pertaining to "racial issues," and false accusations that Plaintiff has spoken negatively about the DEA to other DOJ personnel.

34. Plaintiff worked under multiple supervisors in her time in TDS. During the 2017-2020 most notably, ASAC Lee Nash (White male), ASAC Stephen Jenkins (White male), and ASAC William Kimbell (White male) continuously disregarded Plaintiff's work ethic, awards, and accomplishments.

35. Specifically, while working under ASAC Kimbell's supervision, Plaintiff has felt intimidated, unwelcomed, and threatened. The actions by ASAC Kimbell towards Plaintiff have lowered her self-esteem and made her feel unqualified.

36. On or about August 20, 2020, Plaintiff learned that she had not been selected for the position of Criminal Investigator, Group Supervisor, which was a leadership role at the GS-14 level. This was despite having about 18 years of experience as an 1811 series criminal investigator, receiving a Quality Step Increase, and winning awards for her performance. She has also served as Acting Group Supervisor, demonstrating her ability to perform in that role.

37. Despite having applied on approximately seven different occasions to vacancy announcements for promotion to GS-14, Plaintiff has never been selected for these positions.

38. On or about October 1, 2020, Plaintiff was removed from her role as Acting

Group Supervisor.

39. On or about November 4, 2020, Plaintiff received a lowered performance evaluation.

*Plaintiff Engages in a Second Set of Protected Activity by Filing an EEO Complaint*

40. On or about November 24, 2020, Plaintiff filed a complaint against the DEA for discrimination on the basis of race and sex.

41. At or around that same time, Sears filed an EEO complaint for sexual harassment.

*Continued Acts of Discrimination and Acts of Retaliation*

42. On or about December 20, 2020, DEA Group Supervisors subjected Plaintiff to discriminatory treatment in the form of referring to Plaintiff and another African American Special Agent as "gals" rather than by title, excluding Plaintiff from case discussions, and seeking guidance from other TDS personnel but not from Plaintiff. These insults and exclusion were intentional.

43. On or about January 12, 2021, Plaintiff was notified that she was being moved from TDS and the Nationwide Distributor Initiative to the Tech group, due to "lack of productivity" and "lack of progression," despite her role as affiant in an ongoing investigation under Title III at that time. She was further directed to have no further contact with DOJ prosecutors or confidential sources in connection with TDS.

44. On or about March 16, 2021, Plaintiff's work phone was confiscated.

45. Since having her phone confiscated, Plaintiff has experienced difficulty in performing her job duties effectively as she is required to use her personal phone and search for information that would be readily available if she had access to the confiscated phone.

46. During October 2021, Plaintiff had applied for two additional job vacancies at

8

the HDO. In connection with these applications, Plaintiff was not afforded the same opportunities as her other counterparts who applied, denying her a fair and equitable chance at promotion.

47. On or about November 12, 2021, Plaintiff discovered that she was the subject of an OPR investigation. Plaintiff thereafter learned that SAC Whipple, was one of the subjects of Plaintiff's EEO complaint, and provided the grounds to open the OPR investigation.

48. Based on the above incidents and occurrences, on or about December 15, 2021, Plaintiff notified the DEA that she was amending her EEO complaint to include additional retaliatory acts against her.

49. Plaintiff has suffered damages and consistently faces fear of continued discrimination without any protection or recourse. As a result, Plaintiff continues to endure discrimination, retaliation and a hostile work environment, including public ridicule, character assassination, demotion to a non-enforcement group closed off from her peers, and assignment to a schedule that does not accommodate the challenges of a single-parent.

50. As a result of her initiation of the EEO complaint process, Plaintiff has faced and continues to face acts of retaliation, including non-selection for promotion and the initiation of a baseless OPR investigation, carried out on the part of white, male managing officials in the HDO.

**COUNT I:**
**Race and Gender Discrimination in Violation of Title VII of the Civil Rights Act**

51. The paragraphs above are re-alleged and incorporated as if fully set forth herein.

52. As described above, Defendants discriminated against Plaintiff with respect to the terms and conditions of her employment, including but not limited to, compensation and selection decisions, because of her gender (female) and race (African American), in violation of Title VII, by failing to promote her when she was the most qualified candidate.

53. In addition, Plaintiff has been discriminated against by her White male

supervisors at the DEA in the form of harassment and intimidation. This has been in the form of disparaging and abusive comments including references to her raising "racial issues" and false accusations that Plaintiff spoke negatively about the DEA to other DOJ personnel. It has also been in the form of constructive and unwarranted demotion and lowered performance evaluation following her participation in the EEO process.

54. In June 2020, Plaintiff applied for the position of Criminal Investigator, Group Supervisor under vacancy announcement CMB-20-218-2.

55. On July 14, 2020, Program Analyst Michelle Blair informed Plaintiff that she had made the Best Qualified List and that Plaintiff needed to submit her Career Tracking System Bio and her 8-point Bio for the vacancy. These are required steps for an applicant to be considered for the promotion.

56. Consistent with DEA practice, Plaintiff provided an eight-point memorandum of her skills set and accomplishments as part of her application packet.

57. Plaintiff was informed that she was not selected to the position despite qualifying for the Best Qualified List ("BQL"). ASAC Kimbell later had a conversation with her in which he stated that the decision not to select Plaintiff for the position was largely motivated by his "personal preference" to not promote within the existing group. ASAC Kimbell did not address whether or how the candidate selected for the position, a female of a different race than the Plaintiff, surpassed the qualifications that earned Plaintiff's placement on the BQL.

58. ASAC Kimbell's explanation was nothing more than pretext for underlying and intentional discrimination because Plaintiff is an African American female. Various officers and agents have been promoted within the groups they were assigned previously, including SAC Whipple. ASAC Kimbell's decision and belief that Plaintiff was unqualified for a leadership role

was based nothing more than on impermissible, discriminatory personal preferences and biases.

59. Plaintiff alleges that she was not selected for the GS-14 position because she was a female, and/or because she was African American, and not based on her qualifications or any other meritorious grounds.

60. The Agency's conduct has been intentional, deliberate, willful, and conducted in callous disregard of the rights of Plaintiff.

61. Title VII's anti-discrimination provision makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

62. As a remedy, Plaintiff seeks selection to a Group Supervisor position or other GS-14 position within the HDO to which she applied, or to one for which she is now qualified. She seeks any pay differential, benefits, front pay, pain and suffering and emotional distress damages up to the statutory maximum, attorneys' fees and costs, and injunctive relief requiring the Agency to fully comply with Title VII and not discriminate against African American females in the selection of promotional positions. Plaintiff further seeks any remedy the Court considers appropriate and just.

**COUNT II:**
**Retaliation for EEO Opposition Activity as a Witness to Sexual Harassment Claims**
**42 U.S.C. § 2000e-3**

63. The Paragraphs above are re-alleged and incorporated as if fully set forth herein.

64. Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "discriminate against any of his employees...because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made

a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

65. Plaintiff witnessed the sexual harassment of Special Agent Sears and supported her in connection with her claims of sexual harassment.

66. As a witness listed in connection with SA Sears's sexual harassment claims, Plaintiff participated in numerous meetings and interviews related to the incident that she witnessed.

67. Plaintiff reported the events that she witnessed in good faith and spoke honestly.

68. Shortly after, and as a consequence of, serving as a witness, Plaintiff was subject to adverse employment actions, including non-selection despite being on the Best Qualified List for promotion, and constructive demotion to a less prestigious role.

69. Prior to her participation as a witness and assistance to Sears, Plaintiff had received no discipline.

## COUNT III:
## Retaliation for EEO Opposition Activity in the Filing of an EEO Complaint
## 42 U.S.C. § 2000e-3

70. The paragraphs above are re-alleged and incorporated as if fully set forth herein.

71. Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "discriminate against any of his employees...because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a).

72. The Agency's discriminatory denial of selection for promotion against Plaintiff constitutes unlawful retaliation in violation of Title VII's anti-retaliation provision. Further, the

Agency's refusal to process the claim was part of a hostile work environment designed to discourage Plaintiff and others from pursuing protected EEO activity.

73. The retaliatory actions of the Defendant occurred shortly in time after the Plaintiff participated in the EEO process, and the explanations for the personnel actions following her participation in the EEO process reflected illegal retaliation in violation of federal civil rights law protecting her activity.

## COUNT IV:
## Title VII Claim for Hostile Work Environment

74. The paragraphs above are re-alleged and incorporated as if fully set forth herein.

75. Title VII prohibits discrimination against an employee by creating a hostile work environment.

76. A hostile work environment exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Systems*, 510 U.S. 17, 21, 114 S.Ct. 367, 370 (1993).

77. As set forth above, senior management subjected Plaintiff to a hostile work environment when they made various denigrating statements referencing the Plaintiff's race and gender, and repeatedly demonstrating a lack of professionalism and respect towards Plaintiff.

78. The DEA and its management officials further perpetuated the hostility towards Plaintiff when they launched a baseless OPR investigation in response to Plaintiff's EEO complaint. This investigation was intended to intimidate, discredit, and silence the Plaintiff.

79. The DEA and its management officials' unfounded and repeated hostility towards Plaintiff was motivated by discrimination and in direct retaliation for her protected activity.

80. The DEA and its management officials' demeaning comments towards Plaintiff were intended to intimidate Plaintiff and were designed to make Plaintiff's work environment hostile and difficult.

81. The DEA and its management officials subjected Plaintiff to a severe and pervasive hostile work environment that negatively and effectively changed the terms and conditions of her employment. She was effectively unable to perform the full range of her duties by being sidelined and denied of the equipment needed to perform her work.

82. The DOJ is liable to Plaintiff for the misconduct of its employees working at the DEA.

83. Plaintiff has suffered damages as a result of the hostile work environment created by management, including past and future lost wages and benefits, and the costs of bringing this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

1. To be promoted to a GS-14 position in the HDO;

2. To be provided with approved time off in the number of hours required by Plaintiff to undergo therapy and/or counseling;

3. To be provided with counseling paid for by the DEA;

4. To be awarded monetary compensation in the amount of no less than $300,000.00;

5. To be awarded the pre- and post-judgment interest to which she is entitled under law.

6. To be awarded any back-pay, front pay, benefits re-calculations or other such compensation as is warranted under the circumstances.

7. To be awarded her reasonable attorney's fees in bringing this action.

8. To conduct diversity and sensitivity training at the DEA HDO division surrounding culture, promotion and advancement practices for all DEA management officials, including ASAC Kimbell; and

9. Any additional relief this Court finds just or equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests trial by jury for all claims herein.

Date: July 20, 2022

Respectfully Submitted,

/S/*Ashok Bail*
ASHOK BAIL
STATE BAR # 24043541
BAIL LAW FIRM, PLLC
3120 Southwest Freeway, Suite 450
Houston, TX 77098
(832) 216-6693
(832) 263-0616 (Fax)
ashok@baillawfirm.com

Kevin E. Byrnes, Esq.
(*pro hac vice* forthcoming)
Jessica D. Rabinowitz, Esq.
(*pro hac vice* forthcoming)
**FH+H**
1751 Pinnacle Drive, Suite 1000
Tysons, Virginia 22102
T: (703) 590-1234
F: (703) 590-0366
kbyrnes@fhhfirm.com
jrabinowitz@fhhfirm.com

*Counsel for Plaintiff*